UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MAY MILLER and  PLAINTIFFS
TIMOTHY MILLER

vs.  CIVIL ACTION NO. 3:14-CV-443-CRS

COTY, INC. and
COTY US, LLC  DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on objections by Defendants Coty, Inc. and Coty, US, LLC (collectively, "Coty") to Plaintiffs witness lists (DN 86) and on objection by Plaintiffs May Miller and Timothy Miller (collectively, "Plaintiffs") to Coty's witness lists (DN 87). Plaintiffs have requested a hearing on Coty's objections. The Court finds a hearing unnecessary. Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

This case arises from an injury sustained while using an at-home hair-removal waxing kit. In May of 2013, Timothy Miller ("Timothy") purchased a "Sally Hansen Extra Strength All-Over Body Wax Kit." ("Product"). Timothy alleges he purchased the Product for his wife, Plaintiff May Miller ("May"), to be used on her pubic area after discussing the topic of waxing. When Plaintiffs used the Product at home later that month, May sustained an injury to her labia majora. Specifically, the injury occurred while Timothy Miller was waxing May's pubic area. Plaintiffs bring claims against Coty under Kentucky's laws of products liability, breach of warranty, and consumer protection. This matter is set for jury trial on February 25, 2019. Pursuant to the scheduling order, the parties submitted objections to the other party's witness lists.

## II. Objections by Coty

Coty filed objections (DN 86) to Plaintiff's witness list (DN 84). Plaintiff filed a response to the objections (DN 92).

### A. Coty's objections to Plaintiffs' factual witnesses

Coty objects to Plaintiffs calling Summer Ashley[1] and Ann Munoz as fact witnesses because Plaintiffs never included the two witnesses in their Rule 26 Initial Disclosures, nor did Plaintiffs amend or supplement their disclosures prior to filing their Witness List. (DN 86, at 3-4). In support of their objections, Coty relies on Rule 37(c)(1):

> *Failure to Disclose or Supplement*. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

#### 1. Summer Ashley

Ms. Ashley is expected to testify to May's emotional state after May's injury. (DN 92, at 2). Plaintiffs contend that Ms. Ashley was made known to Coty throughout the discovery process, and therefore exclusion is improper under the Federal Rules. (*Id.* at 2-3). This Court agrees. Rule 26 contains an exemption from the duty to disclose:

> (1) *In General.* A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission-- must supplement or correct its disclosure or response:
>
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and *if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing…*

Fed. R. Civ. P. 26(e)(1)(A) (emphasis added).

---

[1] Summer Ashley was formerly known as Summer Sumner. (DN 92, at 2).

2

The record is clear that Ms. Ashley and the subject of the information about which she may testify was made known to Coty throughout the discovery process. Ms. Ashley was identified in Plaintiffs' Answers to Interrogatories on November 7, 2014 as someone known to have knowledge of discoverable matters. (DN 92-1, at 2). Additionally, Coty's counsel questioned May about Ms. Ashley during May's deposition on March 10, 2015:

> Q: You list a Sumner Summer?
>
> A: Summer Sumner, it's actually Ashley now. She got married.
>
> Q: And who is that?
>
> A: She has been a friend of mine.
>
> Q: And what does she add to this?
>
> A: She was emotionally supportive during or immediately after the injury.
>
> Q: So she would be able to testify as to your emotional state after the injury; is that correct?
>
> A: Yes.

(*Miller Dep.* 66:20-67:5, Mar. 10, 2015, DN 92-2, at 4-5). The Court finds that the non-disclosure of Ms. Ashley was not harmful to Coty because Coty was aware of this individual and that she had discoverable information. *See Odom v. Thompson*, No. 5:13-CV-211-TBR, 2017 WL 6522072, at *2 (W.D. Ky. Dec. 19, 2017) (declining to exclude witnesses where party was aware of the individuals and their relevance to the case); *Jackson v. Herrington*, No. 4:05-CV-00186-JMH, 2011 WL 1750200, at *2–3 (W.D. Ky. May 6, 2011) (declining to exclude witnesses who were not initially disclosed, but were identified in documents that were produced during discovery). Coty's objection to the testimony of Ms. Ashley will be overruled.

### 2. Ann Munoz

Whether Plaintiffs should be permitted to let Ms. Munoz testify is a little trickier. Ms. Munoz, like Ms. Ashley, is expected to testify to May's emotional state as a result of her injury. Unlike Ms. Ashley, however, Plaintiffs concede that Ms. Munoz was not properly disclosed through either initial disclosures or the discovery process. (DN 92, at 3). Plaintiffs contend that the potential prejudice to Coty in allowing Ms. Munoz to testify is minimal, and the failure to disclose harmless. Plaintiffs explain that, because Coty was aware of Ms. Ashley and chose not to depose her, one can infer Coty never intended to take discovery depositions of any fact witnesses providing insight into May's emotional state. (*Id.*). Plaintiffs, however, are "willing to aid Defendants should they desire to depose [Ms.] Munoz" to eliminate any prejudice this Court finds. (*Id.* at 4). Coty asserts that Plaintiffs failed to prove that their nondisclosure was justified or harmless.

Rule 37(c)(1) "requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010).

The Sixth Circuit considers five factors in determining whether the failure to disclose was "harmless":

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron, 801 F.3d 718*, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)). "The Advisory Committee Notes to the 1993

4

Amendments (including Rule 37(c)(1)) strongly suggest that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Id.* at 747 (quoting *Vance ex rel. Hammons v. United States*, 182 F.3d 920, at *5 (6th Cir. 1999)) (cleaned up). As then-District Judge Thapar explained: "The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bentley v. Highlands Hosp. Corp.*, No. CV 15-97-ART-EBA, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016) (internal citation omitted). "District courts have broad discretion in applying these factors and need not apply each one rigidly." *Id.* The Court turns to address each factor.

**Surprise to Coty.** Where there is one, there are many. Or so Plaintiffs say. Plaintiffs concede that Ms. Munoz was not properly disclosed through either initial disclosures or the discovery process. That Coty was made aware of Ms. Ashley through discovery, who would testify to May's emotional state, does not diminish the shock value of an undisclosed and previously unheard-of witness who would also testify to May's emotional state. This factor weighs in Coty's favor.

**Ability to cure the surprise and the extent to which allowing the evidence would disrupt the trial.** The second and third factors cut both ways. On the one hand, Plaintiffs have offered "to aid Defendants should they desire to depose [Ms.] Munoz prior to the trial date" (DN 92, at 4) which would presumably lessen any disruption at trial. On the other hand, one harm of surprise is case disruption which unfairly punishes the innocent party. The trial of this matter is set for February 25, 2019, and the parties will likely be deposing other witnesses between now and then. *See infra* Part III. The Court finds that a deposition of Ms. Munoz would be insufficient to cure the surprise and to avoid disruption of an eleventh-hour witness at trial at this stage.

**Importance of the evidence.** Although Ms. Ashley will be testifying about May's emotional state, Plaintiffs assert that Ms. Munoz can provide "her own unique insight" into May's emotional state. (DN 92, at 3). Plaintiffs did not provide any more detail to the Court, let alone Coty, regarding the importance or substance of Ms. Munoz's testimony. Considering that Ms. Ashley will be permitted to testify, the Court does not find that the importance of Ms. Munoz's testimony warrants reopening discovery.

**Plaintiffs' explanation for their failure to disclose the evidence.** The closest Plaintiffs come to offering an explanation boils down to the strained assumption that Coty's counsel would not have bothered to take Ms. Munoz's deposition even if Plaintiffs properly disclosed her, because counsel had no interest in taking Ms. Ashley's deposition. (DN 92, at 3). As then-District Judge Thapar admonished: "Under Rule 37(c)(1), forgiveness must be earned. Unlike exclusion, it neither comes automatically nor easily." *Bentley*, 2016 WL 5867496, at *11. Here, Plaintiffs untimely produced Ms. Munoz. The deadline for Rule 26 disclosures was more than four years ago, and the deadline for fact discovery was June 1, 2017 after several agreed-to extensions. (DN 86, at 6). The Court does not know if this was due to an honest mistake, negligence, or "underhanded gamesmanship." *Bentley*, 2016 WL 5867496, at *10. Without more, and considering Ms. Ashely will testify to May's emotional state, the Court is convinced that Plaintiffs have not satisfied their burden[2] of showing that the violation was harmless or substantially justified. *See Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-CV-1047-CRS, 2016 WL 9460472, at *5 (W.D. Ky. June 29, 2016) ("The burden to prove that a violation of Rule

---

[2] The Court notes Plaintiffs do not address the *Howe* factors with respect to their failure to disclose Ms. Munoz. Plaintiffs do, however, conduct a thorough analysis of the *Howe* factors to show that any insufficient expert disclosure is substantially justified or harmless.

26(a) was either substantially justified or harmless rests squarely on the party facing sanctions under Rule 37."). Coty's objection to and motion to exclude Ms. Munoz will be granted.

**B. Coty's objections to Plaintiffs' expert witnesses**

Coty also objects Plaintiffs calling Dr. Virginia Stokes, Dr. Nana Mizuguchi, and Dr. Mark Rich as expert witnesses because Plaintiffs did not comply with the disclosure requirements for expert witnesses.

The Federal Rules of Civil Procedure require that parties disclose the identifies of any expert witnesses they intend to use at trial to present evidence. Fed. R. Civ. P. 26(a)(2)(A). Under Rule 26, experts are divided into two categories: those who must provide a written report and those who do not have to provide a written report. Witnesses who have been retained specifically for the purpose of offering testimony in the case fall under Rule 26(a)(2)(B) and are required to provide a written report. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)–(vi). A report is not required of witnesses not retained for the purposes of providing expert testimony. *Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964, 979 (W.D. Ky. 2017). Non-retained experts, instead, are subject to the less burdensome requirements of Rule 26(a)(2)(C). A disclosure for a non-retained expert must include the following information:

(i) The subject matter on which the witness is expected to present evidence under Federal Rules of Evidence 702, 703, or 705; and

(ii) A summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C)(i)–(ii). Such witnesses include treating physicians, "who are both fact witnesses and, by virtue of their education, training and experience experts." *Deere*, 239 F. Supp. 3d at 979 (internal citation and quotation marks omitted). *See also Selby v. Kmart Corp.*, No. 1:17-CV-00042-GNS, 2017 WL 6347967, at *4 (W.D. Ky. Dec. 12, 2017) ("The Advisory Committee's

7

Note to the 2010 Amendment to Rule 26 indicates that such witnesses would 'include physicians or other healthcare professionals … who do not regularly provide expert testimony.").

The parties agree that Plaintiffs' expert witnesses are subject to the less burdensome requirements of Rule 26(a)(2)(C). Coty, however, asserts Plaintiffs' disclosures fail to comply with the least stringent disclosure requirements for non-retained experts. The Court will address each challenged expert witness in turn.

### 1. Dr. Virginia Stokes

In Plaintiffs' Rule 26 Expert Disclosures, Plaintiffs identified Dr. Stokes as follows:

> Dr. Stokes is not a retained expert, however, she is expected to testify consistent with her diagnosis, care and treatment of May Miller, her observations of May and May's injury, May's prognosis, and the reasonable cost of May's medical treatment, past and future. She is also expected to testify consistent with her September 12, 2013 letter previously produced, Exhibit 8, which contains her opinions in in this matter. Dr. Stokes would also be expected to testify consistent with her treatment notes, also previously produced. Dr. Stokes' October 22, 2015 treatment note is also attached as Exhibit 9.

(DN 92-6, at 1). The letter from Dr. Stokes reads:

> On 26 May 2013, May Miller sustained an extensive laceration that required several sutures due to the use of your waxing product. There was a significant amount of swelling in the weeks following. She has retained a discernible amount of scarring and loss of sensation. There is tenderness and chronic discomfort that will most likely be permanent. The area involved is permanently disfigured and will never regain a normal appearance.

(*Id.* at 2).

The Court finds Plaintiffs sufficiently disclosed information as required by Rule 26. Plaintiffs' expert disclosures provide a statement of the subject matter upon which Dr. Stokes is expected to testify: Dr. Stokes's diagnosis, care, and treatment of May. (*Id.* at 1). Further, the letter from Dr. Stokes provides adequate guidance as to the facts and opinions to which Dr. Stokes is expected to testify. Coty's objection and motion to exclude Dr. Stokes will be denied.

### 2. Dr. Nana Mizuguchi

In Plaintiffs' Rule 26 Expert Disclosures, Plaintiffs identified Dr. Mizuguchi as follows:

> Dr. Mizuguchi is not a retained expert, however, he is expected to testify consistent with his diagnosis, care and treatment of May Miller, his observations of May and May's injury, May's prognosis, and the reasonable cost of May's medical treatment, past and future. Dr. Mizuguchi would also be expected to testify consistent with his treatment note, Exhibit 10.

(DN 92-7, at 1-2). The above disclosure does provide the subject matter upon which Dr. Mizuguchi would testify – the medical treatment provided to May. However, the disclosure makes no effort to provide a summary of the facts and opinions to which Dr. Mizuguchi is expected to testify. Plaintiffs assert that the single treatment note, dated February 12, 2015, and attached to the disclosure is sufficient. Yet, Plaintiffs do not alert the Court to any case law where a single treatment note can be used to satisfy the disclosure requirements of Rule 26(a)(2)(C). The Court finds that the treatment note is insufficient to put Coty on notice of the range of opinions Dr. Mizuguchi holds on any of the subject matter upon which he is expected to testify. *See Jelsma v. Knox Cty., Tennessee*, No. 3:14-CV-351-TAV-CCS, 2017 WL 2589340, at *8 (E.D. Tenn. June 14, 2017) (excluding treating physician's testimony where plaintiffs submitted "a few treatment notes" from the physician).

The Court must now address whether to sanction Plaintiffs under Rule 37(c)(1) for failure to properly disclose Dr. Mizuguchi. Plaintiffs assert that exclusion under Rule 37 would be improper "because any alleged harm by the disclosure is harmless, and was made pursuant to Plaintiffs' good faith believe they complied with the Federal Rules." (DN 92, at 9). Just as the Court did with regard to Ms. Munoz, the Court will conduct an analysis of the *Howe* factors to determine whether the insufficient disclosure was harmless.

Here, Plaintiffs have not demonstrated that their error was harmless. Although Coty knew "who" would testify, Coty has no basis upon which to know the "what": the extent of Dr.

9

Mizuguchi's testimony. Plaintiffs contend Dr. Mizuguchi's testimony is critical because he is the medical provider who saw May for a potential labiaplasty, and will be able to give the jury insight into the long-term impact of May's injuries. (*Id.* at 11). The importance of Dr. Mizuguchi's testimony, however, is diminished because Dr. Stokes will be permitted to testify about the "lasting complications" associated with May's injury. (*Id.* at 8). Further, Plaintiffs have failed to provide a sufficient reason for their failure to comply with Rule 26(a)(2)(C), other than their excuse that they believed they complied with the rules by providing a single treatment note. The Court is not persuaded that sloppiness paired with a disregard for the rules justifies trial by ambush. Plaintiffs have not put forth a sufficient showing that they have earned forgiveness under Rule 37(c)(1). *See Bentley*, 2016 WL 5867497, at *11. As such, the Court will exclude the testimony of Dr. Mizuguchi.

### 3. Dr. Mark Rich

Unlike Dr. Stokes and Dr. Mizuguchi, Dr. Rich was never specifically disclosed in Plaintiffs' Rule 26 Expert Disclosures. Dr. Rich is a physician at Ireland Army Hospital which was identified in Plaintiffs' disclosures as follows:

> Plaintiff reserves the right to call any of her treating healthcare providers at Ireland Hospital, including the emergency room physicians and healthcare providers of May 26, 2013. They are not retained experts, however, they would be expected to testify consistent with their diagnosis, care and treatment of May Miller, their observations of May and May's injury, May's prognosis, and the reasonable cost of May's medical treatment, past and future. They would also be expected to testify regarding their treatment notes, previously provided.

(DN 92-3, at 1). Coty acknowledges it was in possession of the names of several doctors, obtained through the medical records from Ireland Army Hospital, and the medical records. (DN 86, at 11). Coty asserts, however, that this is insufficient to relieve Plaintiffs of their burden under Rule 26. (*Id.*). Plaintiffs concede Dr. Rich was not *specifically* disclosed, but Plaintiffs believe Dr. Rich was *sufficiently* disclosed because Plaintiffs identified Dr. Rich as an Ireland Army Hospital

10

physician in May's Answers to Defendants' Interrogatories, and his opinions were summarized in the Ireland Army Hospital disclosure. The Court disagrees.

Although Dr. Rich was identified during the discovery process, Plaintiffs still had an obligation to provide the subject matter, facts, and opinions to which Dr. Rich was expected to testify as required by Rule 26(a)(2)(C). *See Roark v. Speedway, LLC¸* No. 13-139-ART, 2015 WL 12978822, at *3 (E.D. Ky. Apr. 6, 2015) (excluding doctor as an expert witness where plaintiff identified doctor in his response to interrogatories but never provided the required Rule26(a)(2)(C) summary). The disclosure of Ireland Army Hospital does not save Plaintiffs because the disclosure itself is insufficient. Although it discloses the subject matter upon which physicians from Ireland Army Hospital would testify – the diagnosis, care, and treatment of May – it fails to provide a summary of the facts and opinions to which the Ireland Army Hospital witnesses are expected to testify. Instead, the disclosure states the treating healthcare providers at Ireland Hospital "are expected to testify regarding their treatment notes, previously provided." (92-3, at 1).

Courts within the Sixth Circuit have held that this "go figure it out yourself" approach does not satisfy the Rule 26 disclosure requirements. In *McFerrin v. Allstate Property & Cas. Co.*, the Eastern District of Kentucky explained:

> [N]either the fact that [the defendant] may have known the identities of several doctors who had examined [the plaintiff], nor the fact that [the defendant] was in possession of a large number of medical records is enough to discharge [the plaintiff's] duty to properly and formally disclose witnesses, records, and other evidence as required by Rule 26.

29 F. Supp. 3d 924, 932 (E.D. Ky. 2014); *See also Trent v. Anderson*, No. 1:16-CV-00002-HBB, 2017 WL 2569524, at *4 (W.D. Ky. June 13, 2017) (holding that disclosure listing the names of plaintiff's treating healthcare providers and stating that "they would testify 'regarding Plaintiff's injuries, treatment, medical expense, pain and suffering, future treatment and prognosis'" did not satisfy the duty of disclosure).

11

Having concluded that Plaintiffs failed to sufficiently disclose Dr. Rich, the Court must again determine whether to exclude this witness under Rule 37 using the *Howe* factors. Although not named in the expert disclosures, Plaintiffs identified Dr. Rich on November 7, 2014 as an Ireland Army Hospital physician in May's Answers to Defendants' Interrogatories. (DN 92, at 12). Unlike Dr. Mizuguchi, it appears Coty is aware of what Dr. Rich would testify to as Coty's own expert, Dr. John Penta, has reviewed and criticized Dr. Rich's diagnosis, care, and treatment of May. (DN 92-4). Plaintiffs contend, and the Court agrees, that Dr. Rich's testimony is crucial because Dr. Rich sutured May's injury. (DN 92, at 14). Although Plaintiffs, again, fail to provide an adequate justification for their failure, the *Howe* factors of surprise and importance tip the scales in favor of letting Dr. Rich testify. The Court further finds that Plaintiffs can negate any surprise or potential disruption at trial by providing Coty with a proper disclosure before trial.

After careful consideration, the Court concludes that Plaintiffs' failure to properly disclose Dr. Rich is harmless. The Court will deny Coty's objections to and motion to exclude the testimony of Dr. Rich. The Court will, however, order Plaintiffs to provide Coty with a specific disclosure of Dr. Rich's opinions and facts which fully comports with Rule 26(a)(2)(C). He will not be permitted to testify beyond said disclosure.

### III. Objection by Plaintiffs

Plaintiffs filed an objection (DN 87) to Coty's witness list (DN 82). Coty filed a response to the objection (DN 91) to which Plaintiffs replied (DN 95). Plaintiffs object to the introduction of Michael Knopf's deposition at trial in lieu of his live testimony. If Mr. Knopf is unavailable to testify live at trial, Plaintiffs request leave to take a trial deposition of Mr. Knopf.

A party seeking to admit a deposition at trial must prove that the requirements of Fed. R. Civ. P. 32(a) have been met. *Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990). Rule

32(a)(4) provides that any party may use a deposition of a witness for any purpose if the court finds that the witness is dead; the witness is more than 100 miles from the place of hearing or trial or is outside the United States; the witness cannot attend or testify because of age, illness, infirmity, or imprisonment; or if the party offering the deposition could not procure the witness's attendance by subpoena.

Mr. Knopf was listed as a factual witness on Coty's Initial Rule 26 Disclosures on October 1, 2014 (DN 91, at 1), and as an expert witness on January 27, 2016 (DN 95, at 1). At that time, Mr. Knopf was Coty's Director of Global Research and Development, Body Care. (DN 91, at 1). Mr. Knopf's deposition was taken on April 22, 2015 when the case was less than a year old. (DN 95, at 1). Plaintiffs assert that, at the time of his deposition, Plaintiffs had no prior knowledge of Mr. Knopf's opinions and testimony, or that Coty intended for him to testify at trial via deposition. (DN 87, at 2). Consequently, Plaintiffs' line of questioning was designed only to gather information, and Plaintiffs did not challenge Mr. Knopf's skill, credibility or confidence. (*Id.*).

In Coty's response, Coty acknowledges that Coty anticipated calling Mr. Knopf live at trial. (DN 91, at 2). In July of 2018, however, Coty's counsel learned that Mr. Knopf was no longer an employee of Coty. (*Id.*). Mr. Knopf now resides in Hackettsow, New Jersey, and Coty asserts it has no authority to compel Mr. Knopf's presence at trial since he is no longer an employee of Coty. (*Id.*). Coty also asserts that "[i]f anyone is prejudiced by not having Mr. Knopf testify live at trial it would be Defendants" because only Plaintiffs asked questions of Mr. Knopf at his deposition. (*Id.*). Defendants request that they be allowed to play Mr. Knopf's discovery deposition at trial, or in the alternative, be permitted to take the trial deposition of Mr. Knopf. (*Id.*).

Although Mr. Knopf is unavailable to testify at trial, his discovery disposition on August 22, 2015 was for the purpose of gathering information. Indeed, both parties expected Mr. Knopf

to testify live at trial. (DN 87, at 2; DN 91, at 2). Further, neither party objects to a trial deposition of Mr. Knopf. The Court will, therefore, sustain Plaintiffs' objection and will grant the parties leave to take the trial deposition of Mr. Knopf.

## IV. CONCLUSION

For the foregoing reasons, the Court will order the following:

1. Defendants' Objections to Plaintiffs' Witness List and Motion to Exclude Witnesses (DN 86) will be **GRANTED in part** and **DENIED in part**:

    a. The Court will **DENY** Defendants' motion to the extent it seeks to exclude the testimony of Summer Ashley.

    b. The Court will **GRANT** Defendants' motion to the extent it seeks to exclude the testimony of Ann Munoz.

    c. The Court will **DENY** Defendants' motion to the extent it seeks to exclude the testimony of Dr. Virginia Stokes.

    d. The Court will **GRANT** Defendants' motion to the extent it seeks to exclude the testimony of Dr. Nana Mizuguchi.

    e. The Court will **DENY** Defendants' motion to the extent it seeks to exclude the testimony of Dr. Mark Rich. The Court will **ORDER** Plaintiffs to provide Coty with a specific disclosure of Dr. Rich's opinions and facts which fully comports with Rule 26(a)(2)(C) on or before **January 4, 2019**. Dr. Rich will not be permitted to testify beyond said disclosure.

2. The Court will **SUSTAIN** Plaintiffs' objections to the deposition testimony of Michael Knopf. The Court will grant the parties leave to take the trial deposition of Mr. Knopf. An order will be entered in accordance with this opinion.

December 21, 2018

Charles R. Simpson III, Senior Judge
United States District Court

14